This is an appeal from an order of the Monmouth county orphans court dismissing a petition of appeal from an order of the surrogate of Monmouth county admitting a certain paper-writing to probate as and for the last will and testament of the decedent, Louis J. Boury, who died on the 7th day of September, 1937. The will was admitted to probate by an order of the surrogate of Monmouth county on September 23d 1937, and on March 19th, 1938, and within the six months' statutory period allowed non-residents of New Jersey to appeal from the probate of a will, Mae R. Hedian and Jennie E. Hedian, cousins of decedent, and residents of Baltimore, Maryland, filed in the Monmouth county orphans court a petition of appeal from the probate of said will. *Page 609 
Orphans court rule 50 provides that:
"The appellant shall, within ten days after filing any petition of appeal with the Surrogate unless the Orphans Court shall, for good cause, grant further time, cause the Surrogate to issue citations to all the persons concerned, named in said petition of appeal, to appear before the Orphans Court of the same county on a day therein to be named and shall cause said citation to be duly served; and the said Orphans Court shall, at the time and place mentioned in said citation, or at such other time or place as it may then appoint, hear and determine the matter in controversy."
Although the petition of appeal was seasonably filed by appellants, the necessary citations did not issue within the requisite ten-day period, being ultimately issued three days thereafter. Respondents then moved before the orphans court of Monmouth county to dismiss the appeal. The motion was granted and the appeal dismissed on the ground that appellants had failed to comply with rule 50, not having caused citations to issue and be served within the necessary ten days, and not having been granted an extension of time within which to cause citations to issue and be served; and the court being satisfied that appellants had "not shown good cause why they should be relieved of their default."
It is the contention of the appellants that they complied with rule 50, and that even assuming that they did not, justice demands that the merits of their appeal be heard. The rule requires an appellant "to cause the surrogate to issue citations" within the allotted ten days, and to "cause said citations to be duly served." (Italics mine.) The appellants claim they met this requirement by "requesting" the surrogate to issue citations; that that is all they are obligated to do, and the fact that citations were not actually issued by the surrogate until after the lapse of ten days is of no importance in so far as their compliance with rule 50 is concerned.
Affidavits submitted by appellants show that the petition of appeal was filed on March 19th, 1938, by a special messenger sent to the surrogate's office in Monmouth county by the law firm of Quinn Doremus, proctors for the appellants, and that this messenger had a general conversation with Miss *Page 610 
Hendrickson, chief clerk in the surrogate's office, as to the time of filing the appeal, plus a reference to the citations. An affidavit by Mr. Quinn sets forth that he had telephoned Miss Hendrickson on the same day, advised her a messenger was on his way to file a petition of appeal, and "requested her to issue the citations." Miss Hendrickson, on the other hand, upon oath stated that she "had no recollection whatever of any reference to the issuance of citations in the Boury estate."
Be that as it may, the fact remains that citations did not issue within the allotted ten days and from this the conclusion is inescapable that the appellants failed to "cause" the issuance and service of such citations. To "cause" an act to be done, and to "request" that it be done, are two entirely different things, and a mere request that citations issue does not satisfy rule 50. The citations must actually issue.
Orphans court rule 51 provides that if an appellant "shall fail to cause citations to be issued by the surrogate as provided in rule 50" the court "may, in its discretion, dismiss the said appeal with costs." On the motion to dismiss, the learned judge of the orphans court held there was "no good cause" why appellants should be relieved of their default in failing to comply with rule 50, and in the exercise of the discretion expressly vested in him, dismissed the petition of appeal.
As a general rule, rules of court are rigidly adhered to, except when the result of such adherence will work an injustice.In re Ahrend, 99 N.J. Eq. 328; In re Faitoute, 102 N.J. Eq. 17.
There can be no doubt that the order appealed from in this controversy was a discretionary one; and it is well settled that the exercise of a discretionary authority will not be reviewed, unless it has been clearly abused. State v. Potter,83 N.J. Law 428; affirmed, 85 N.J. Law 388; State v. Lunch,103 N.J. Law 64; State v. Then, 114 N.J. Law 413.
It cannot fairly be said that the court below abused the discretion reposed in it by rule 51. Where any default is made by a litigant he must, in order to obtain from the court *Page 611 
a relaxation of the rules, show not only an excuse for his default, but also a meritorious case. Boyer v. Boyer, 77 N.J. Eq. 144;In re Faitoute, supra; Haines v. Seabrook Farms,99 N.J. Law 273.
In their appeal from probate, the appellants urge as grounds for attack upon the will of Louis J. Boury, that the deceased "was of unsound mind," "was unduly and fraudulently influenced;" that the execution of the will was "illegal and insufficient to the laws of this state," and that the will was "illegal and improper" "for other and divers reasons." Beyond these allegations set forth in appellant's petition, the record is bare of any supporting evidence, and there is no suggestion of merit in the appellants' case. On the other hand, respondents, in connection with this motion to dismiss, filed several affidavits relating to the merits of the petition. Roger Nutt, an attorney admitted to practice in New York and New Jersey, stated that he aided in preparing several wills and codicils for the testator, was present when the testator executed his last will, that the testator was at the time of sufficient mental capacity to execute the will, and that the will was legally executed and witnessed by two of Mr. Nutt's associates, Mr. Prendergast and Mr. Matthews, members of the New York bar. Alice Emory, housekeeper for decedent from the year 1911 until the time of his death, Dr. Joseph Wiener, decedent's attending physician, and Delaware C. Andre, decedents' Maryland attorney, all stated in affidavits that they had personally observed decedent up until the time of his death and that to them he appeared at all times to have a sound and disposing mind, memory and understanding.
The decedent had executed four wills during his lifetime, all having been drawn by the same law firm, and none differing greatly from the others. In each will, the appellants, Mae R. Hedian and Jennie E. Hedian were legatees. The only change ever made as to them was to reduce the amount of their legacy from $10,000 to $7,500. In each will, the residuary estate was left to Johns Hopkins University, Baltimore, Maryland. An affidavit of Daniel Willard, president of the board of trustees of Johns Hopkins University, states *Page 612 
that so far as he has been able to ascertain, no officer or representative of the university, including himself, had ever known or heard of Louis J. Boury until informed of his death.
With these affidavits before it, the orphans court was of the opinion that the appellants had not shown "good cause" why they should be relieved of their default in not fully complying with rule 50, and I am unable to conclude that there was any abuse of discretion in so holding. The order of the Monmouth county orphans court will be affirmed.
 *Page 1